UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMANDA RAPLEE,

                          Plaintiff,          11-CV-6214

                                              **DECISION**
                  v.                          **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                          Defendant.
_____

## INTRODUCTION

Plaintiff, Amanda Raplee ("plaintiff"), brings this action *pro se* pursuant to Title II of the Social Security Act ("The Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), John P. Costello, denying her application for benefits was not supported by substantial evidence in the record and was contrary to the applicable legal standards.

The commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. section 405(g), on the grounds that the Commissioner's decision is supported by substantial evidence. Plaintiff has not responded to this motion.

For the reasons set forth below, this Court finds that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, I grant the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

On April 2, 2008, the plaintiff filed an application for DIB benefits under 42 U.S.C. § 423 alleging disability due to depression, anxiety, and right foot pain, with an onset date of April 14, 2007. Transcript of the Administrative Proceedings at 10, 12 (hereinafter "Tr."). The plaintiff's application was denied at the initial stage and upon reconsideration. The plaintiff timely requested a hearing before an ALJ, and appeared before Judge John P. Costello with attorney, Jeffrey Vaisy, on December 21, 2009.

In a decision dated January 7, 2010, the ALJ determined that the plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied plaintiff's request for review on February 18, 2011. Plaintiff then filed this action *pro se*.

## DISCUSSION

I.  Jurisdiction and Scope of Review

42 U.S.C. Section 405(g) grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976).

Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits this Court's scope of review to two inquiries: 1) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990)(holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings pursuant to Rule 12(c). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed

and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

II.   Standard for Entitlement to DIB Benefits

In order to be entitled to disability insurance benefits, the plaintiff must prove (1) that she has a medically determinable mental or physical impairment which can be expected to last for a continuous period of not less than twelve months and (2) that she is unable to engage in substantial gainful employment by reason of this impairment. 42 U.S.C. § 423(d), See McMillen v. Califano, 443 F. Supp. 1362, 1365 (N.D.N.Y. 1978). If the plaintiff establishes that her impairment is so severe that she is no longer able to engage in her previous occupation, the burden shifts to the Secretary to come forward with evidence that there is some other kind of substantial gainful employment which the plaintiff, given her age, education, work experience and medical condition, is capable of doing. McMillen, 443 F. Supp. at 1365-1366.

In reviewing a denial of a disability insurance benefits claim, a court must affirm the decision of the Commissioner if it is supported by substantial evidence on the record as a whole. Id. at 1366. Substantial evidence means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Id.

Here, after determining that the plaintiff met the insured status requirements of the Social Security Act, the ALJ determined that the plaintiff's depression, anxiety, and right foot pain were "severe" impairments under 20 C.F.R. § 416.920(c). Plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 14, 2007, through the date last insured, December 31, 2007. Tr. 12. Accordingly, the relevant period for this proceeding is only eight and one-half months.

The ALJ found that the plaintiff had no past relevant work under 20 C.F.R. § 416.965. Id. at 17. The ALJ then determined that the plaintiff retained the residual functional capacity ("RFC") to perform unskilled, light work, except that she could not have contact with the public and she could only have occasional contact with co-workers. Tr. 17. The ALJ relied upon the testimony of a vocational expert, and concluded that there were jobs that the plaintiff could perform, considering her age, education, work experience and RFC. Id. at 18.

III. The Commissioner's decision to deny the plaintiff benefits was supported by substantial evidence in the record.

A. Plaintiff's Medical History

Plaintiff saw Podiatry Associates of Rochester for treatment of her right foot from August 18, 2008 to November 11, 2008, after the relevant period. Tr. 342-346.  According to her treating

doctor, Dr. Michael Giordano, claimant was unable to work from August 18, 2008 to January 5, 2009 due to a possible stress fracture and ruptured tendon.

Plaintiff was referred to Dr. Harbinder Toor of Industrial Medicine Associates by the Division of Disability Determination for an orthopedic exam on August 15, 2008.  Tr. at 282-284. Dr. Toor observed that the plaintiff had moderate pain in the right foot, radiating to her right leg and lower back.  At the time of the examination, she was using crutches. Plaintiff had an abnormal gait and she was limping to the right side, both with and without crutches. During the examination, plaintiff declined to walk on her heels and toes or squat. Plaintiff could not stand for more than a few minutes without crutches, and needed crutches to walk. Plaintiff had full Range of Motion ("ROM") in her upper extremities, her left lower extremities, and her right hip.  She had slight pain at her right knee, but her movements were normal and full. Dr. Toor opined that her prognosis was fair. He also opined that she had a moderate to severe limitation in standing, walking, and putting pressure for long periods of time on her right leg, due to her right leg injury.

On August 25, 2008, S. Staub, a consultative examiner, completed a Physical RFC for the plaintiff. Tr. at 323-327. S. Staub opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an

eight-hour workday, sit for about six hours in an eight-hour workday, and was unlimited in her ability to push and/or pull. S. Staub also noted that plaintiff had full ROM in both her upper extremities and in her left hip/ankle/knee. However, Plaintiff declined movement of the right ankle. Further, S. Staub observed no postural, manipulative, visual, communicative, or environmental limitations. S. Staub stated that the plaintiff had some physical limitations, but not to the degree alleged.

On September 22, 2004, plaintiff saw Dr. Jill Redy of Caledonia Medical Center, with complaints of depression for the previous 6 or 7 months. Tr. at 265-266. Dr. Redy noted that plaintiff was prescribed Zoloft by Dr. Przystal, her primary care physician, but that she had not taken the medication for over a year. At the time of her appointment, plaintiff was suffering from increasing depression, poor sleep, financial stress, and domestic violence. Dr. Redy prescribed Zoloft, and suggested that she follow up with Dr. Przystal.

On December 30, 2004, plaintiff had a follow-up appointment with Dr. Przystal. Plaintiff stated that she felt well without her medication, and that she had not been using it for almost a year. Plaintiff also stated that she could follow simple instructions properly, and perform simple tasks, but when those instructions became complicated, she would not be able to remember them. Plaintiff also reported that she had no difficulty walking,

bending, pushing or pulling, and that she was able to stand on her feet. Dr. Przystal opined that a job that required fast-paced work or complicated instructions may be a problem for the plaintiff but, otherwise, there was "no reason why she cannot work." Id.

Plaintiff started counseling at Strong Memorial Hospital's Family Treatment Center ("Strong") with Dr. Susan Horwitz. Tr. at 191. On January 3, 2006, plaintiff reported no vegetative signs of depression. Id. at 195. At a January 24, 2006, appointment, plaintiff presented a "high level of depression and anxiety." Id. at 203. On January 25, 2006, plaintiff reported that she was not suicidal or depressed. Id. at 201. On February 3, 2006, plaintiff had improved mood and affect. On May 2, 2006, plaintiff was examined by psychologist Susan Horowitz and therapist Patricia Holly and reported that she had a history of depression. Id. at 211-213. At her mental status exam, plaintiff was cooperative and fully oriented. Id. at 212. Her mood was depressed, but her affect was appropriate and memory intact. Id. Her Global Assessment of Functioning (GAF) score was 60. Id. at 213.

On February 1, 2007, plaintiff, at the time ten-weeks pregnant, returned to Dr. Przystal seeking treatment as a result of a recent motor vehicle accident. Tr. at 261.Plaintiff reported that she had some stiffness in her back, but was otherwise ok. Id. Plaintiff was not taking Zoloft at the time of this appointment and did complain of depression. Dr. Przystal noted that the plaintiff

had normal gait, intact sensation, full muscle strength, and no spasms in her back. Plaintiff complained of stiffness and discomfort in her lower back. Id.

Dr. Przystal noted that the plaintiff was tearful, but her speech was appropriate and clear, her thought process was normal, and there was no evidence of anxiety. Dr. Przysal prescribed Lexapro. Id.

Plaintiff was referred to Dr. Alan Dubro of Industrial Medicine Associates by the Division of Disability Determination for an orthopedic exam on August 15, 2008. Tr. at 285-289. Plaintiff was cooperative and presented in an adequate manner during her mental status examination. She was coherent and goal directed with no evidence of delusions, hallucinations, or thought disorders. Her mood was significantly depressed during the exam. Plaintiff's attention and concentration, and recent and remote memory were significantly impaired secondary to a depressed mood. Her cognitive functioning was in the "below average" range. Id. at 288. Both her insight and judgment were fair. Dr. Dubro opined that plaintiff was capable of following and understanding simple directions and instructions. Her ability to learn new rote tasks was limited and she required assistance to complete complex tasks. Id. Plaintiff retained a limited ability to relate adequately with others, but she was not capable of regularly attending to a routine or

maintaining a schedule.  Dr. Dubro opined that her prognosis was guarded. Tr. at 289.

On August 21, 2008, plaintiff had another mental RFC completed, by consultative psychologist Dr. Harding. Tr. at 290. Dr. Harding concluded that plaintiff was mildly limited in her activities of daily living and moderately limited in maintaining social functioning and maintaining concentration, persistence, or pace. Tr. at 300. He also noted that plaintiff was moderately limited in her ability to remember locations and work-like procedures and very short and simple instructions, but found her to be markedly limited in understanding and remembering detailed instructions. Id. at 318. Plaintiff was also moderately limited in her ability to carry out short and simple instructions and her ability to maintain attention and concentration for extended periods, as well as her ability to perform activities within a schedule, maintain regular attendance, and to work in close proximity to others without being distracted by them. He found Plaintiff was markedly limited in her ability to carry out detailed instructions but was not significantly limited in her ability to sustain an ordinary routine without special supervision. Plaintiff was moderately limited in all areas of social interaction. Tr. at 319. Plaintiff was also moderately limited in her ability to respond appropriately to changes in the work setting and her ability to set realistic goals or make plans independently of

others. Plaintiff was not significantly limited in her ability to recognize normal hazards, take proper precautions or to travel in familiar places.

Plaintiff was evaluated at Unity Health ("Unity") by Mary Ann Wilson on October 23, 2008 for depression. Tr. at 347-353. Plaintiff reported that she had been depressed since childhood and felt tired and "kinda lazy" recently. Her recreational activities included going out to dinner, walking, and spending time with her children. Upon examination, Ms. Wilson found that plaintiff was sad, had superficial insight, and maintained good judgment. Ms. Wilson recommended that plaintiff undergo individual therapy.

On September 9, 2009, plaintiff saw Carol Horowitz, LCSW, for depression. Tr. at 363. She stated that she was seeking therapy because of the death of her father. During followup appointments with the plaintiff, Ms. Horowitz stated that she "[did] not appear to be appropriate to work at this time." Id. at 364, 365, 367-368, 369.

On November 30, 2009, Mr. David Lehning, LCSW, provided a letter to plaintiff's attorney in which he stated that he had worked with the plaintiff's family for about 2 years as a part of Monroe County's Early Intervention Program. Tr. at 335. Although he was not plaintiff's therapist, and he only kept records for the children, he opined that plaintiff had severe anxiety and

depression, which negatively affected her ability to obtain employment. Id. at 336-337.

B.   The ALJ's Findings

The ALJ determined that the plaintiff had the RFC to perform unskilled, light work[1], except that she could have no contact with the public and only occasional contact with co-workers. Tr. 14. The ALJ relied upon the medical reports from plaintiff's treating and examining doctors in support of his decision, including the reports of Dr. Przystal, S. Staub, and Dr. Toor. Tr. 15-17. He gave less weight to the opinions of consultative physician Dr. Dubro and social worker David Lehning. After reviewing the record in its entirety, the Court finds that there is substantial evidence in the record to support the ALJ's decision that the plaintiff was not disabled during the relevant time period, April 14, 2007, through the date last insured, December 31, 2007.

C.   Physical RFC

The majority of the medical records relating to plaintiff's alleged physical impairment, right foot pain, relate to the time period after the date last insured. However, even these records support the ALJ's decision that Plaintiff could perform light work.

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 416.967(b).

For example, on August 25, 2008, a physical RFC was completed by a state agency review consultant, S. Staub.  In this RFC, S. Staub opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and was unlimited in her ability to push and/or pull. S. Staub stated that the plaintiff had some limitations, but not to the degree alleged. Id. at 326. The regulations provide that State agency medical consultants are "highly qualified" and "experts in Social Security disability evaluations." 20 C.F.R. § 416.927.

S. Staub's conclusion is consistent with the notes of Dr. Przystal from September 2007, who noted that the plaintiff had normal gait, intact sensation, and full muscle strength. Tr. at 261.  Further, on August 15, 2008, Dr. Toor found full ROM in her upper extremities, left lower extremities and normal and full right hip and knee movements.  She declined to move her right ankle and used crutches do to an injury, but she had full strength and normal senses and reflexes. Tr. at 281-4.

The ALJ found that S. Staub's conclusion that the plaintiff could complete light work was "consistent with the objective evidence contained within the record as to the [plaintiff's] physical limitations." Id. at 16. After a complete review of the record, the Court finds that the ALJ's decision is supported by

substantial evidence, including the opinions of S. Staub and Drs. Przystal and Toor.

D.   Mental RFC

The regulations provide that the ALJ will "always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). As for the evaluation of documents presented by the plaintiff's treating physician, the ALJ is ordinarily required to:

> give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927 (C)(2).

Further, the regulations provide that "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." Id.

Here, the ALJ gave the opinion of plaintiff's primary care physician, Dr. Catherine Przystal, controlling weight. According to the notes of Dr. Jill Redy, from September 2004, Dr. Przystal had previously treated plaintiff's depression with Zoloft. Tr. at 265.  The plaintiff had follow-up mental health appointments with

Dr. Przystal, including a December 30, 2004 appointment at which Dr. Przystal evaluated the plaintiff's RFC for work. Id. at 266. At this time plaintiff stated that ". . . she . . . understand[s] instructions well and ha[d] no difficulty communicating with others . . . and ha[d] no difficulty walking, bending, pushing, or pulling." Id. Dr. Przystal opined that a job with fast-paced work or complex instructions might be a problem for the plaintiff but, otherwise, she did not see a reason why the plaintiff could not work. Id.

After reviewing the entire record, the Court finds that the ALJ properly gave controlling weight to the opinion of Dr. Przystal. Her opinion is supported by the record as a whole, during the relevant time period, and the ALJ properly discounted the opinions of those consulting physicians and other treatment providers who opined that the plaintiff suffered from greater limitations. The Court also notes that those doctors and treatment providers who determined that the plaintiff suffered from greater limitations rendered their opinions after the relevant time period, in some cases, years.

Plaintiff saw Dr. Alan Dubro for a mental health evaluation, at the request of the Commissioner. Id. at 285-289. On examination, Dr. Dubro observed that the plaintiff was fully oriented and cooperative. Her mood was "significantly depressed" and her affect was blunted. Id. Both her attention and concentration and recent

and remote memory skills were significantly impaired. Dr. Dubro estimated that plaintiff's cognitive functioning was in the below-average range. Id. at 288.

Dr. Dubro concluded that the plaintiff was capable of understanding and following simple directions and instructions, and that she experienced significant difficulty in attending to and remembering simple directions and instructions. Further, Dr. Dubro noted that plaintiff's ability to learn new rote tasks was limited, her concentration was significantly impaired, and her ability to relate to others was limited. He stated that the plaintiff could make appropriate decisions, but was not capable of regularly maintaining a routine or a schedule and that her psychiatric problems would "significantly interfere with [her] ability to function on a daily basis." Id.

Pursuant to 20 C.F.R. section 416.927(c)(2), the ALJ declined to give Dr. Dubro full weight, as he was a consultative examiner who did not have a treatment relationship with the plaintiff. Tr. at 17. The ALJ also found that the his opinion was inconsistent with the record as a whole and that "no other treating or examining medical source had found the claimant unable to perform simple repetitive tasks." Id.  The Court finds that this determination is supported by the record.

For example, Dr. Dubro found that the plaintiff's memory and concentration were impaired, yet Dr. Horowitz and Ms. Holly, her

doctor and therapist at Strong, found that her memory and concentration were intact. Tr. 191, 1940196, 202-205, 287. Dr. Dubro also found that the plaintiff's cognitive functioning was unremarkable, while Ms. Wilson, her therapist at Unity, found that the plaintiff's cognition was unremarkable. Tr. 288, 352. Because of these inconsistencies, this Court finds that the ALJ properly discounted Dr. Dubro's opinion.

David Lehning, a social worker, wrote a letter to plaintiff's attorney, dated November 30, 2009, in which he stated that he had been working with the plaintiff's family on behalf of her children. In the letter her disclaimed that he was not her therapist and that any records that he kept were for the benefit of the children and not the parents. Id. at 335. Mr. Lehning opined that the plaintiff's "severe anxiety and depression ... affects [her] ability to obtain employment, be productive, or ... function as an effective employee." Id. at 336. The ALJ found that the Mr. Lehning's opinion was not in accordance with SSR 96-5p and accordingly, he was not considered an acceptable medical source. Because Mr. Lehning's status is neither a treating physician nor plaintiff's examining physician, the ALJ properly discounted his opinion concerning plaintiff's limitations in accordance with the rule specified in 20 C.F.R. § 416.927.

As noted above, the relevant period under review in this case was only approximately eight and one-half months, from April 14,

2007 to December 31, 2007.  The plaintiff must show that she was disabled during this period in order to be entitled to benefits. Tr. at 12. During the relevant period, the record reveals that plaintiff sought medical treatment for only gynecological issues and not for mental health. Tr. at 261. However, at her appointment with Dr. Przystal, the plaintiff mentioned that she had been diagnosed with depression, was not taking her Zoloft as prescribed, and was prescribed Lexapro. Id. But, there are no mental status records during the relevant period, and no evidence that her depression rose to the level of disability before or during that period.

Although the record contains several opinions that plaintiff cannot work or has severe mental limitations, all post-date the relevant period.  The opinion of Ms. C. Horowitz, for example, that the plaintiff  was not "appropriate to return to work at this time" was rendered in September 2009, almost two years after the relevant period had ended. Tr. 363. Further, this opinion stated that she could not work _at this time_, offering no opinion as to whether or not the plaintiff was able to work beforehand. Id.

Similarly, the opinion of Mr. Lehning that the plaintiff could not work was also given in April and November of 2009, both well after the relevant period. Tr. 336, 340. And, as mentioned above, Mr. Lehning was not even the plaintiff's therapist, which essentially negates his gratuitous diagnosis and opinion.

-Page 18-

Dr. Dubro's opinion of the plaintiff's mental health, like those of Ms. Horowitz and Mr. Lehning, also pertains to her condition after the relevant period as it was rendered in August of 2008, more than a year and a half after the relevant period. Tr. at 285.

In December 2004, the plaintiff's treating physician, Dr. Przystal, opined that there was no reason why the plaintiff could not work in a job that did not require fast-paced work or complicated instructions. Tr. 266. Dr. Przystal's opinion is supported by the mental status examination given by Dr. Horowitz on May 2, 2006. Tr. 211. Dr. Horowitz noted that plaintiff was cooperative and fully oriented, her speech and perception were normal, and her thought process was organized and goal directed. Tr. 212. Plaintiff's affect was appropriate, her memory was intact, and her insight, judgment, and impulse control were good. Id. Further, during the course of her treatment, the plaintiff's mental status findings were generally unchanged, showing intact memory and good concentration. Tr. 191, 194-196, 202-205.

Additionally, the opinions of Drs. Przystal and Horowitz were supported by Dr. Harding, a State agency psychologist who examined the plaintiff in 2008. Tr. 290. Dr. Harding opined that the plaintiff has only moderate limitations in maintaining social functioning and moderate difficulties in concentration, persistence, and pace. Plaintiff also has moderate limitations in

activities of daily living. Tr. 300-320. In all of the work-related tasks evaluated, Dr. Harding only found that the plaintiff was markedly limited in two areas that pertained to the performance of complex tasks. Id.

It is also relevant to note that three days after the relevant period ended, the plaintiff was seen at Strong and received a normal mental status exam.  Tr. at 241.

Therefore, because the ALJ's mental RFC finding was consistent with the opinions of Dr. Przystal, Dr. Horowitz  and Dr. Harding along with other medical evidence in the record that plaintiff was capable of performing unskilled work with limitations on contact with the public and co-workers, the Court finds that it is supported by substantial evidence in the record. See 20 C.F.R. § 416.968.

E.   The ALJ correctly evaluated the Plaintiff's credibility.

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent that they [were] inconsistent with the above residual functional capacity assessment."  Tr. at 14.  In determining the claimant's credibility, the SSA states that a strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record, so the adjudicator must consider such factors as: the degree to which the individual's statements

are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment, and the consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. SSR 96-7p. In rejecting a claimant's credibility with respect to allegations of pain and other symptoms, an ALJ may rely on contradictions in the claimant's own statements, or inconsistencies between the claimant's statements and the record as a whole. Davis v. Apfel, 149 F. Supp. 2d 99, 107 (D. Del. 2001).

Here, the ALJ relied upon the vague and evasive nature with which the plaintiff testified about her impairment(s) to discount her testimony. Tr. 16. Plaintiff was not forthcoming with the dates of her treatment, specifically her treatment at Unity Health. First, the plaintiff stated that she was unsure about when she was treated there, but later admitted that a course of therapy ended only a month before the hearing. Id. The plaintiff also admitted that she quit counseling after missing 7-8 weekly sessions in a 3-4 month period. Id. The plaintiff was inconsistent with her explanation about why she left Unity in November 2009. Id. at 16. Plaintiff was documented by her counselor at Unity as a "no show for psych eval and group meetings." Id. at 355. In fact, plaintiff

only attended one session at Unity and told her counselor that she was leaving the program at Unity because she had "moved her care to a private practice and is getting her medication through her PCP [Dr. Przystal]." Id.   At her hearing, however, she testified that she left Unity because of her childcare issues. Id. at 39.

Based on these inconsistencies and the fact that the record does not adequately support her subjective complaints, this Court finds that the ALJ correctly found that the plaintiff's subjective complaints were not credible.

F. The ALJ properly determined that there were jobs in the national economy that plaintiff could perform

The ALJ found that there was work that a person with plaintiff's limitations could perform which is available in the national economy. Tr. At 17-18. In making this determination, the ALJ considered plaintiff's age, education, and work experience and he relied upon the opinion of a vocational expert. The Commissioner may properly rely on the testimony of a vocational expert in response to a hypothetical question regarding the availability of jobs which could be performed by the claimant and which exist in sufficient numbers in the national economy. See Dumas v. Schweiker, 712 F. 2d 1545, 1553-54 (2d Cir. 1983). Based on this Court's review of the entire record, the Court finds that the ALJ properly determined that there were jobs in the national economy that the plaintiff could perform.

## CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision to deny the plaintiff benefits was supported by substantial evidence in the record. Therefore, I grant the Commissioner's motion for judgment on the pleadings.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    August 6, 2012
          Rochester, New York